Good morning, your honors. May it please the court counsel. My name is Krista Hart. I represent appellant Jeffrey Green. My goal is to reserve three minutes for rebuttal. We will try to help you achieve that goal. Thank you. I'm going to focus on two aspects of the sentencing hearing, both regarding the acceptance of responsibility adjustment. First, whether the district court erred in ruling prior to hearing allocution from Mr. Green, and second, whether it was appropriate for the district court to consider the third-party witness statement in its analysis in denying the acceptance of responsibility, downward departure, downward adjustment. Before allocution, the court specifically said that it had to rule on it before hearing allocution, which creates a bit of a catch-22 for a defendant in this situation. The defendant has the burden of proving that he is remorseful, that he has contrition, and that he's accepting responsibility for his actions. However, according to what the district court did and said in this case, the district court is precluded from even considering that. Did he rule before the allocution? Where did he rule? It's at ER page 23. The district court said the fact that the Ninth Circuit very clearly said that, but I want to know where he actually ruled before the allocation. Oh, she ruled at page 34. I'm going to deny the acceptance of responsibility under the guideline. And that was before the allocation? That was before the allocation. That was well before the allocation. The allocution begins at about page 76 of the excerpts of record. Did the defendant, after the district court made those comments that you just referred to, did the defendant try to make any remarks in response? The defendant personally remained silent until... His lawyer? His lawyer did. Actually, at page 21 of the excerpts of record, the lawyer did specifically say... My final note here, and this has to do with the history of Mr. Greene's approach to this case, one element or sort of background element the court is to consider is contrition. So Mr. Greene intends to allocute to this court, and I think the only way he'll be able to express that contrition, given the situation. So his attorney did say Mr. Greene will be is relevant to the acceptance of responsibility, downward adjustment. But the district court found that it could not hear that. The district court found that it was bound to determine the guidelines calculation at the very beginning of the hearing. No ifs, ands, or buts about it. You see, what's odd about it is he didn't. I mean, in fact, he did it before the allocation, but he didn't do it at the very outset of the hearing. They had a whole discussion about the guidelines and so on, right? It was very limited. This was a fairly lengthy sentencing hearing, and the discussion about the guidelines went all the way up to page 76 of the excerpts of record, where the defendant began his allocution. The court ruled at page 23 of the excerpts of record. So there was a significant amount of discussion after the court's ruling. So it was only on page actually 14 of the actual transcript itself, which is page 23 of the excerpts, but it was fairly early in the sentencing hearing that the court made that decision. And that precludes a defendant from ever being able to exercise their right under Rule 32 I-4 to allocute and to provide information to the court. What puzzles me, and this is not inconsistent with your argument, what puzzles me is that Judge Gleeson says that the Ninth Circuit has very clearly instructed her, or the district court, to rule before the allocution. I don't know what case the government had given her that seemed to persuade her that that was so. The only thing I could think of, and I cited to it in my letter brief, was the Cardi case, where they say at the outset the court should determine the guidelines. But my reading of that and other Supreme Court precedent is that a determination of the guidelines has to start the analysis, but not necessarily in time the hearing, because... I think the case law favors your position, right? Assuming you're correct that it was there for the district court to proceed in that fashion, is that error subject to harmless error review? Oh no, it would not be, because under Varga, also cited in my brief, any error in calculating the guidelines is substantial and would be harmful, because here the court imposed a mid-guidelines sentence of 108 months. And if the guideline range were lower, it's very likely the court would have imposed a mid-guideline range sentence of the lower range. And additionally, here during the change of plea hearing, there seems to be some language that the government agreed it would not oppose the third point level of reduction for acceptance of responsibility if the court found the two levels were appropriate. So here it appears that even if the two levels were awarded, he might even be entitled to a third level reduction. You also have an argument that this case is not comparable to the G.I.N.N. case. I don't know whether to pronounce it gin or gin. I don't know how to pronounce it either, but gin and gurido, the cases that were discussed at length at the sentencing hearing, involve convictions and counts of conviction. Here Mr. Green pled guilty to the sole count in the indictment, felon in possession of a firearm. There were two additional firearms mentioned in the indictment, but they aren't separate counts. They weren't charged as separate counts. Therefore, those cases are inapposite because they don't compare the same analysis. This is relevant conduct. This is not a separate count. So the argument goes that the district court erred in holding it against him with respect to those counts that were not charged. Well, the district court erred in ruling prior to having Mr. Green allecute. Thank you. Good morning. May it please the Court, Jonas Walker for the United States. Your Honor, if I may begin before making my argument, just responding to a bit of counsel's argument. The government did not persuade Judge Gleeson to rule on acceptance of responsibility prior to allocution. That's something Judge Gleeson did on her own. Do you agree with your adversary that that was a mistake on the part of Judge Gleeson? No, Your Honor, I don't agree. The cases that the government relies on are explained in the government's letter brief. Those cases were talking about not in any sensible way a temporal description of how the sentencing proceeding is supposed to proceed. The point is that they're supposed to calculate the guideline before they decide, go to the 3553A factors and decide on the sentence, but not how within the guideline's calculation they're supposed to proceed. Your Honor, in response, if I may, take one moment. Your Honor, reading from the Supreme Court's decision in Gall, 2007, this is page 49 of the Gall decision, and I quote, As we explained in Rita, a district court should begin all sentencing proceedings by correctly calculating the applicable guideline range. Obviously, but that didn't happen here either, right? Because, in fact, she went on for many pages discussing the guidelines questions, as one would expect her to do, right, as a matter of law with the lawyers. She didn't walk in and say, and it would make no sense for her to do that, here's my guideline calculation, now you can argue. Your Honor, the way this case was litigated, Judge Gleeson... Is that what you're arguing should happen? The judge should walk in at the beginning and say, here's my guidelines calculation, before anybody gets to say anything? Your Honor, the answer is it depends. In this case, that did not happen. I know, but what is your understanding of what you just read? Your Honor, the government's understanding is consistent with what Judge Gleeson did in this case, which is first she took the defendant's plea and made sure that it was a knowing, intelligent, voluntary plea. Then she held a lengthy evidentiary hearing, which was necessary because the court had to make findings of fact regarding how many guns Green possessed. Only after Judge Gleeson could hear the evidence and make factual findings could she reach the factual findings necessary to calculate the guidelines. At the conclusion of the evidentiary hearing, Judge Gleeson found that the government proved by a preponderance of evidence that Green possessed three firearms and that two of those were stolen. That was essential to correctly calculate the guidelines. The guidelines also required the court to decide whether or not the defendant has accepted responsibility. Judge Gleeson recognized that because contrition is so important to the Ninth Circuit, that sometimes it might seem as though a district court judge should wait until after allocution to decide whether a defendant has accepted responsibility. Even on your own terms, it seems to me that the allocution would be a part of the fact finding as to contrition and therefore should go first. Your Honor, it could. If I may just explain why I think it didn't happen in this case. Number one, the custom in the district court is that the defendant gets to speak last because the defendant is the one with the skin in the game. And district court judges, at least my impression as a prosecutor, is that judges want to make sure that the defendant has the last word. Second, there's a significant constitutional issue here. If a district court judge were to come on the bench and immediately turn to a defendant and say, defendant, I'm about to determine whether you have accepted responsibility. One of the most important factors is your contrition. What do you have to say to me? That puts the district court in a very difficult position and it puts defendants in a difficult position and defense counsel because if a district court judge did that and a defendant relied on his or her right to silence, then the record would suggest that the district court was unconstitutionally punishing a defendant for exercising his right. That isn't so at all because in spite of the defendant's silence, the district court could still say, well, these are the factors I rely on in concluding that the defendant has not shown sufficient condition. That's correct, Your Honor. Yours may be a rare situation, but I don't think it's a common one. So I don't think the constitutional issue is significant. So what else do you have? Your Honor, if I may simply refer the court back to the briefing. Well, let me get back up a little bit further. Even though, well, I think your understanding is the goal and maybe in our cases are that, one, certainly it's true that the district judge should correctly calculate the guidelines and let counsel know what that calculation is. At the beginning of the sentencing proceeding. But I think the difference here is, and then, you know, those calculations are subject to testing during the sentencing proceeding. Right? And, you know, in other words, they aren't final and binding. Obviously, you know, district judges change, sometimes change their minds on, you know, what the proper guidelines are. But in this case, Judge Gleeson, didn't she sort of let everybody know, well, if this is final, you know, I'm not going to change it, and you can't argue to make me change it. Isn't that what it amounted to? No, Judge Tsushima, I don't agree that Judge Gleeson issued a finding and forbade the defense from revisiting it. Well, no, she did in the sense of exceptions of responsibility. Yes. She said, with respect to that, I'm not going to listen to what he says in allocution with respect to that particular provision. That's exactly what happened, right? Your Honor, I don't agree with that characterization. Well, what did happen then? Because as I read it, she says, I have to make my decision with respect to exception of responsibility before you allocate. That's correct, Your Honor. That's what I just said. Your Honor, if I understand what you're referring to, I believe you're referring to the moment in the transcript when counsel below asked Judge Gleeson whether she was relying on the DOSIC affidavit as a basis for finding no acceptance, and Judge Gleeson said that her ruling stood and she wouldn't further elaborate. But I think Judge Tsushima's comment is very illustrative here. Green below had the opportunity and did not take it to ask Judge Gleeson to revisit the acceptance after allocution. That's why Luke Green has waived any argument. What do you mean by had the opportunity? You mean just in the course of the normal sentencing proceeding when he was permitted to allocate? Your Honor, what I'm referring to is because the allocution typically, and in this case occurs last, if Green or his counsel had said, Your Honor, now that the record is complete, now that Green has allocated, we ask the court to revisit the factual and legal findings for acceptance. She's already ruled that she's not going to do that. In other words, you're saying he had to make a motion for reconsideration. That's what that amounts to. Yes, Your Honor, it would be. Is that the customary rule that whenever a judge makes a ruling, before you can challenge it on appeal, you have to make a motion for reconsideration? I don't think so. Your Honor, typically the way it happens, in my experience, in the sort of fluid dynamics of sentencing hearings, is that if the defense believes that something has changed, if there's some material difference that changes the guidelines, defense counsel is not shy about raising the issue. Except when the judge says, well, this is final. I have to make my final decision before we start, and I've made it, and that's it. Now, that's what you're saying the defense has to challenge, right? Your Honor, at the very least, what the defense needs to say is, Your Honor, please listen to the elocution before you rule on acceptance of responsibility. That's what the defense did, and she ruled, says, I can't do it. So here's, can we talk for a moment about the other question about the three guns and the fact that your position, as I understand it, is that those guns were not relevant conduct but were part of the charge? Yes, Your Honor, they're charged conduct. But they weren't. I mean, they were part of the charge, but he pleaded guilty. They charged three guns in one count. Yes, Your Honor. So they only had to prove one, and he pleaded guilty to one. That's correct, Your Honor. So that's it. He pleaded guilty to the charge. So the other two guns at that point become relevant conduct. They're not part of the charge. Your Honor, from the government's perspective, they're offense conduct, but ultimately it doesn't matter whether they're offense conduct or relevant conduct. Why? Because the answer is in 3E1.1. As the court knows, the defendant has the burden of proving acceptance of responsibility. I'm not talking about acceptance. So in 3E1. . . I am talking about acceptance. Okay, go ahead. So in 3E1.1, the last sentence of Note 3, a defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right. Green argued below, and I'll refer to Green's sentencing memo in the supplemental excerpt of record, that he was entitled to acceptance of responsibility merely by pleading guilty. That was his posture below. That's a position not based on the law. But the district court was urged by the government, and as I understood it, accepted that this wasn't he didn't have any response. He didn't. . . It wasn't a precondition of the acceptance of responsibility that he admit to the other two guns, and your representation was that it was. Your Honor, I'm not sure I follow. Are you getting to the issue of the third point, the third acceptance of responsibility point for the time limit? Yes. I mean, your position was that he had to accept. . . He had to have admitted to all three guns. Your Honor, my position is that he must truthfully admit to conduct comprising the offense and truthfully admit and not falsely deny relevant conduct. That's directly from Application Note 1A. But the district court found that he didn't falsely deny the two guns, the second two guns. That's correct, Your Honor. But also, as I understood it, was urged by you and accepted that he needed to admit all three guns because all three were in the original charge. Your Honor, the government's position is that, at the very least, to prove that he accepted responsibility, Greene needed to not falsely deny the two guns, and he also needed to not minimize the one gun that he admitted to. In this case, Judge Gleeson found that Greene minimized the conduct in two ways, really. One, the DOSIC affidavit, and if I may respond to counsel's argument. . . Your Honor, she found that at the time of . . . At the evidentiary hearing. It was at the time when she denied the acceptance of responsibility, so it was after the conclusion of the evidentiary hearing prior to the sentencing hearing where she went into the full 3553A factors. So there's two things that Greene did to minimize his conduct. One, have his counsel file the DOSIC affidavit, and two, in his allocution, talk about the fact that he committed this crime because he was stupid, and Judge Gleeson disagreed with that and said, no, this is a very sophisticated man who understands the system very well, and he's, from the government's perspective, manipulating the process to artificially reduce his guideline calculation. But ultimately, Your Honor, if I may simply refer back to 3E1.1, because that's really the law that controls here, Greene had the burden of proving to Judge Gleeson that he accepted responsibility. There are eight factors identified in 3E1.1 in the Blackletter Law, and I do see that my red light is blinking if I may finish this thought. There are eight factors in 3E1.1. Greene didn't do any of them. The very first factor is he cannot falsely deny relevant conduct. So insofar as Judge Berzon is correct that the two additional guns were relevant conduct, when Greene falsely denied those. She said he didn't. That's correct. Judge Gleeson found that he did not. The government's position is that he did. So you're fighting the factual determination by the district judge? Your Honor, the government's position is the Ninth Circuit can affirm on any basis, and so ultimately whether— What are we supposed to do in the sense, are we just say, well, we think Judge Gleeson is wrong? Ordinarily on factual determination we need to find something like clear error. That's correct, Your Honor, and the government's position is Judge Gleeson's factual finding was not clearly erroneous. Okay. Thank you. I think one of the key things that the government said during their argument is it depends and that each sentencing hearing has to be specific and particular to the defendant and the facts and circumstances of that hearing. So it depends. In a case where acceptance of responsibility is not at issue, yes, it may be appropriate to determine the guidelines calculation immediately at the beginning of the hearing. However, in a case where acceptance of responsibility is at issue and the burden is on the defendant to demonstrate contrition for the court, then maybe that specific guideline should be determined after the defendant has had a chance to allocute. The government indicated that the only thing Mr. Green said to accept responsibility or show contrition was that he was stupid, and that's not the case at all. On page 77 of the excerpts of record, this is one example of many, the defendant said, Everybody talks about their not being a victim in my crime of ex-con,  and since I have been in the time that I have, the 18 months, thinking about the no victim, I think that's wrong. There is a victim, and that's my family. My family is a victim. My kids are victims. My friends, my work. But above all, you know, I think that besides the people that I interact with, who love me, who like me, I can go on and on. But he didn't just simply say, Oh, I made a mistake. He demonstrated contrition. The court ruled in the district court and made a What are you arguing? He demonstrated contrition, that the finding was error on the merits? I thought you were attacking the procedure. I am attacking the procedure, but during the government's argument, the government counsel asserted that the only thing Mr. Green said to accept responsibility was that he did something stupid, and that's not the case. He did express contrition. So I am attacking it on the procedure. And then on the falsely denying the allegation, as Judge Berzon noted, Judge Gleeson made a finding that Mr. Green did not falsely deny possession of the two extra firearms. Yeah, but she also found that he exercised his constitutional right not to admit the other two. But is it clear that she actually applied a firm rule with regard to his eligibility for the acceptance because he didn't admit to the other two, or did she just take it into account? I believe she just took it into account. So then really, so what's the legal problem with the way she proceeded? Well, the firm rule. Not on the allocation issue. On the three-guns issue. I'm not quibbling with that. I haven't raised that issue. Sorry, what? I'm not quibbling with that. I haven't raised that issue. I thought you had another argument, which was that ---- Oh, that was relying on the DOSIC affidavit to find that Mr. ---- No, I thought that there was another argument, which was that she could ---- She analogized this to the Ginn case, but here there were three guns in one charge, so he did admit to what he was charged with. And so the other two guns were relevant conduct, and she could have accorded him the acceptance of responsibility. Is that not an argument you briefed? I thought it was. I'm not entirely sure I understand. So you're not arguing that? Well, whether it was relevant conduct or part of the offense conduct, after the evidentiary hearing, Judge Gleason did find that his denial was not credible, right? No, she found that Mr. Green did not falsely deny. So there's a line of case law ---- Well, she kind of made, you know, some contradictory findings. Didn't she also say that she didn't believe him when he said, you know, his testimony at the evidentiary hearing? He didn't testify at the evidentiary hearing. Mr. Green didn't testify. Well, what was the basis of her finding then that, you know, he was at least a possessor? That was based on officer testimony at the evidentiary hearing. That didn't have anything to do with ---- So she made no ---- I don't want to say comment. She made no evaluation of the defendant at the close of the evidentiary hearing? I don't believe so. I don't remember specifically. But I do know that at the sentencing hearing, she made an explicit finding that Mr. Green did not falsely deny possession of those two additional firearms. And my understanding is that when courts find that a defendant falsely denied something, it's when the defendant takes the stand, swears under oath, those weren't my guns, or gives some other implausible explanation for the evidence. And here he did not do that. Here's a contradiction. She finds that then you say he didn't falsely deny that they were his guns, but she also found that they were his guns. Yes. Is that right? Yes. So she said he denied it, that wasn't false, but they were his guns. Isn't that a false denial? No, it's not. Because a false ---- Why was it not false? Because a false denial comes when a defendant takes the witness stand and expresses either denies under oath that they are not his guns or gives some other implausible explanation that the court does not believe. Because the denial was not under oath, it was not false. Well, he did not make a specific denial. Didn't he deny it to the police? I'm sorry? Didn't he deny it to the police? That's possible. I can't say that for certain right now. I don't recall that. But the point here is that he pled guilty to the sole count in the indictment. Well, he pled guilty to one-third of the sole count. Well, all he needed to plead guilty to. He pleaded guilty to everything he needed to plead guilty to in order to be found guilty of felon in possession of a firearm. Once he pleaded guilty to the one firearm, the other two firearms became relevant conduct. And so for three or more guns, there's a two-level enhancement. And the fact that two of the guns were stolen is also a two-level enhancement. Then the burden is on the government to prove the facts underlying the upward adjustment for those. That's where this comes into play. And that's a separate argument than the allocution argument. Right. And I thought that you were ---- your concern was that the judge had said that this was similar to the Ginn case. And my concern is because the Ginn case and the Garrido case that they discussed both involved separate counts. Right. This is one count. It's a single-count indictment. He pled to the sheet without benefit of a plea agreement. You said that wasn't your argument, so now I'm really confused. Oh, I'm sorry. So your ---- but so now my concern is she said it was analogous, but she said it wasn't the same. And it didn't appear that she was ---- she did recognize that this was relevant conduct and not ---- the two other two guns were relevant conduct and not the count to which she had to plead guilty, right? She found it to be relevant conduct, yes. Right. So what's the pertinence or the problem with the fact that in her musing, so to speak, you said, well, this is kind of like the Ginn case, but not specifically because it was the ---- in the sense that whether he had pled to the couch with ---- he was charged. Well, because those cases then ---- Yes, hello? I know. I'm trying to ---- I mean, I guess maybe your point that it was simply musings is the key here because I don't know if that's in ---- I don't know if that's critical to this issue. I don't know if it's critical to the issue at bar. The reason why he didn't falsely deny it was that he, because it was relevant conduct, he could put the government to its proof and he could deny it in the legal sense saying I'm not going to tell you whether it's true or not, you go prove it, but not I deny it in the sense that it didn't happen. Correct. And so she certainly recognized that it was to be treated differently than if it was a part of the count. Correct. Okay. Okay. Thank you.  Thank you. Thank you.
judges: Tashima, W. Fletcher, Berzon